Hawkins, J.,
delivered the opinion of the Court.
Moseley brought this action of replevin, in the Circuit Court of Lauderdale County, against Wells, to recover a sorrel horse. The declaration is in the usual form. The defendant pleaded “not guilty.” Upon the trial, the plaintiff proved by one Fields, that he, the plaintiff, had once owned the horse, and had, in the Fall of 1863, swapped for him from his brother.
The defendant then introduced his son, Dan. Wells, who testified, that his father, the defendant, loaned him a horse to ride in the army, with the understanding, he was to return the same horse, or one that would satisfy his father. He was present when Fain and Moseley swapped horses. Fain told Mosely his, (Fain’s,) horse, was a pressed horse, and asked Moseley if he did not recognize him. Moseley said he did, and mentioned *403 the neighborhood from which he came, and said he would take the horse and run all risk, and would trade him in another direction. Witness traded the horse his father loaned him, with some other person, and then swapped with Eain for the horse he got of Moseley, and delivered him to his father, who seemed satisfied. No one was present when Moseley arid Fain traded, except witness. One Blankenship was sitting on the fence, about forty yards off. Witness lived in sight of one Blackwell, and knew, at the time of the trade, the mare Fain was trading Moseley, had been stolen from Blackwell.
The plaintiff then introduced Blankenship, who testified, he was working in the field on the road side, with Moseley, when Fain and Wells came along, and was present at the time of the trade. Moseley asked Fain if the title to the mare was good. Fain replied, it was. Nothing was said about the mare belonging to Blackwell, or having been pressed. Fain and Wells had on soldier’s clothes, and pistols. Shortly afterwards, Moseley traded the mare to one Brown. Blackwell af-terwards proved her and took her from Brown; and thereupon, Moseley paid Brown for her.
The plaintiff then introduced Blackwell, who testified, that in January, 1864, a gray mare was stolen from him. In July, afterwards, he found her in the possession of Brown, and proved her; and thereupon, Brown gave her up without a law suit. Witness lived in sight of Wells, and supposed he knew the mare was his, and had been stolen from him. Witness did not know, positively, who stole his mare, but it was generally believed *404 she was taken by Shepherd’s gang of guerrillas, and that Fain was one of the gang.
Brown, a witness for the plaintiff, stated, he traded with Moseley for a gray mare; shortly afterwards, Blackwell claimed the mare, and proved by witnesses, that she belonged to him, and had been stolen from him. Witness was satisfied she belonged to Blackwell, and gave her up without a suit, and Moseley paid him for her. This was all the evidence.
The Court charged the jury: “This is an action of replevin, and the proper remedy by which the parties must settle their rights, etc. The fact of the horse Fain traded to Moseley, being stolen or pressed property, gave Fain no title; and all subsequent holders under him, with notice, or under such circumstances as to put him on his guard, received none; and if the jury find the facts this way, they will find for the plaintiff; otherwise, they will find for the defendant.”
The defendant excepted to this ruling of the Court, and tendered his bill of exceptions, which was signed, sealed and made part of the record.
There was a verdict and judgment for the plaintiff; and the defendant has appealed in error, to this Court.
The instructions of His Honor, the Circuit Judge, is clearly erroneous, in assuming, that the mare given by Fain to Moseley, in exchange for Moseley’s horse, was stolen or pressed. This was a question of fact, material to the issue, and ought to have been left to the jury.
There was no motion for a new trial; and it is now insisted, that, for this reason, this Court cannot reverse *405 the judgment of the Circuit Court, and remand the cause for a new trial.
This, we think, is the result of a misapprehension of the rule.
It is true, this Court can only reverse for errors apparent upon the face of the record, affecting the merits of the controversy. But, if it can see from the record, that the Court below has committed such an error, it will reverse the judgment and award a new trial, whether it was asked for in the Court below, or not.
If the error complained of, he in the action of the jury — as, for example, that there was no evidence to support the verdict — this Court cannot reverse the judgment and grant a new trial, unless the Court below had been asked to correct the error, and had refused to do so. And in such case, the refusal of the Court to set aside the verdict and grant a new trial, is the error for which this Court will reverse.
The question is: Has the Court below committed an error, affecting the merits of the controversy, and is such error apparent? To entitle a party to a reversal in this Court, it is not necessary that he shall have asked the Court below, to correct its own errors.
Judgment reversed, and cause remanded.